United States District Court
Southern District of Texas
ENTERED
December 20, 2023
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

GALVESTON DIVISION

No. 3:22-cv-59

UNITED STATES OF AMERICA *EX REL* DR. CINDY BUCKMASTER, *PLAINTIFF-RELATOR*,

v.

BAYLOR COLLEGE OF MEDICINE, *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The defendant has moved to dismiss the relator's amended complaint. Dkt. 25. The court will grant the motion in part and deny it in part.

## I. Background

The relator, Dr. Cindy Buckmaster, brings this *qui tam* action against the Baylor College of Medicine under the False Claims Act ("FCA"). Dr. Buckmaster alleges that Baylor defrauded the U.S. government by concealing violations of federal policies that govern the treatment of animals used in biomedical research. Dkt. 13 ¶¶ 13, 21, 76–112.

Baylor is a medical-research institution in Houston that relies on grants from the National Institute of Health ("NIH") to fund its research. *Id.* ¶ 36; Dkt. 25 at 9. These grants are often conditioned on the appropriate treatment of animals used in biomedical research. Dkts. 13 ¶ 51; 25 at 14. NIH has summarized its animal-treatment standards in the Policy on Humane Care and Use of Laboratory Animals ("PHS Policy"). 42 U.S.C. § 289d(1). The PHS Policy sets out requirements regarding living conditions, medication use, experiment parameters, and more. Dkt. 13 ¶ 57. Grantees like Baylor are required to self-report any serious or continuing noncompliance with the PHS Policy to the Office of Laboratory Animal Welfare ("OLAW"). Dkt. 25 at 15.

Dr. Cindy Buckmaster served as the Director of Baylor's Center for Comparative Medicine from 2011 to 2019. Dkt. 13 ¶ 32. As Director, Dr. Buckmaster "oversaw the entire animal[-]care program for the animals involved in biomedical research at [Baylor]." *Id.* ¶ 33. In 2018 and 2019, Dr. Buckmaster became aware of numerous violations of PHS Policy and repeatedly raised compliance concerns internally. *Id.* ¶¶ 162–164. After the violations continued, she emailed OLAW directly in September 2019 and informed it of Baylor's "programmatic noncompliance." *Id.* ¶ 165. Baylor terminated Dr. Buckmaster later that same week. *Id.* ¶ 166.

In December 2021, Dr. Buckmaster sued Baylor on behalf of herself and the United States. Dkt. 1. Dr. Buckmaster alleges that Baylor violated the FCA by knowingly concealing various violations of the PHS Policy from the government, including unauthorized animal surgeries, improper use of anesthesia, and entirely botched surgeries and experiments. Dkt. 13 ¶¶ 75–112. She also brings a retaliation claim, alleging Baylor terminated her because she tried to stop ongoing FCA violations. *Id.* ¶¶ 186–190.

Baylor has moved to dismiss all claims. Dkt. 25. Baylor first contends the FCA claim is barred by the public-disclosure doctrine. *Id.* at 11. Baylor argues Dr. Buckmaster is not a true whistleblower because she merely "repackaged public information and information [Baylor] had already provided to the [g]overnment about its animal-research program and labeled it 'illegal.'" *Id.* To support this assertion, Baylor has attached a litany of public-disclosure documents, *see* Dkt. 25-2, and urges the court to consider these documents at the pleading stage. Dkt. 25 at 8. Baylor also seeks dismissal of the retaliation claim. Dkt. 25 at 48.

## II. Legal Standard

Baylor asserts its public-disclosure argument pursuant to both Rule 12(b)(6) and Rule 56. Dkt. 25 at 16. The Fifth Circuit has repeatedly held that the public-disclosure bar is "necessarily intertwined with the merits and is,

therefore, properly treated as a motion for summary judgment." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011) (quoting *United States ex rel. Reagan v. E. Tex. Med. Cent. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004)). Because Baylor properly asserted the public-disclosure argument under Rule 56, and urges consideration of evidence outside the pleadings, the court will consider the motion under the summary-judgment standard. *See United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 373 (5th Cir. 2017) ("Although Abbott invoked the public disclosure bar through a motion to dismiss, the district court correctly decided it as a motion for summary judgment and considered evidence outside of the pleadings."); *see also United States ex rel. Frey v. Health Management Systems, Inc.*, 2023 WL 2563239, at *5 n.6 (S.D. Tex. 2023), *report and recommendation adopted*, 2023 WL 2564342 (S.D. Tex. 2023) ("A challenge under the public[-]disclosure bar can be evaluated as a 12(b)(6) motion to dismiss or a motion for summary judgment.").

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). For each cause of action moved on, the movant must

set forth those elements for which it contends no genuine dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when the nonmoving party has failed "to address or respond to a fact raised by the moving party and supported by evidence," then the fact is undisputed. *Broad. Music, Inc. v. Bentley*, No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017). "Such undisputed facts may form the basis for summary judgment." *Id.*

## III. Analysis

### A. The Public-Disclosure Bar

"The public-disclosure bar applies whenever *qui tam* relators bring a suit based on publicly available information." *Jamison*, 649 F.3d at 327; *see*

31 U.S.C. § 3730(e)(4)(A). The bar serves to incentivize private whistleblowers while simultaneously discouraging "late-comers who add nothing to the exposure of fraud" from filing opportunistic lawsuits. *Reagan*, 384 F.3d at 174; *see also United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009).

Under the public-disclosure bar, a court must dismiss an action "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed." 31 U.S.C. § 3730(e)(4). The guiding inquiry is whether the relator "could have produced the substance of the complaint merely by synthesizing the public disclosures' description of a scheme." *United States ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 275 (5th Cir. 2021).

In determining whether the public-disclosure bar applies to FCA claims, the Fifth Circuit applies "a three-part test, asking 1) whether there has been a public disclosure of allegations or transactions, 2) whether the *qui tam* action is based upon such publicly disclosed allegations, and 3) if so, whether the relator is the original source of the information." *Id.* (internal quotation marks and citations omitted).

**1. Are there public disclosures?**

Baylor has cited thirty public disclosures, including both news reports and public federal documents, that reveal, in great detail, Baylor's noncompliance with the PHS Policy. *See* Dkt. 33-2 (index of public disclosures). Both categories of reports clearly fall within the definition of public disclosures. *See* 31 U.S.C. § 3730(e)(4)(A); *see Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011) (noting that the inclusion of the term "news media" as a public-disclosure source in § 3730(e)(4)(A) "suggest[s] that the public disclosure bar provides a broad sweep" (cleaned up)). Dr. Buckmaster does not contest that these reports qualify as public disclosures. *See* Dkt. 26 at 12–16. Rather, the parties' arguments focus on whether Dr. Buckmaster's complaint is "based upon" these disclosures.

**2. Is the action based upon public disclosures?**

To survive summary judgment, Dr. Buckmaster "must produce evidence sufficient to show that there is a genuine issue of material fact as to whether [her] action was based on those public disclosures." *Schweizer,* 9 F.4th at 275 (quoting *Jamison*, 649 F.3d. at 327). A "complaint is based on public disclosures for FCA purposes if the facts publicly available to [the relator] could have been synthesized to form the same inference [she] now

alleges in [her] complaint." *United States ex rel Solomon v. Lockheed Martin* Corp., 878 F.3d 139, 145 (5th Cir. 2017).

Dr. Buckmaster first argues that her complaint is not "based upon" public disclosures because she produced additional evidence which had not been previously disclosed. Dkt. 26 at 13. Because she was at the "front and center of the fraud," Dr. Buckmaster argues she can provide far more details of Baylor's noncompliance than any public disclosure to date. *Id.* at 14. Perhaps so, but this is not enough.

Dr. Buckmaster cannot avoid the public-disclosure bar "simply by adding other claims that are substantively identical to those previously disclosed." *Colquitt*, 858 F.3d at 374. "Even if [Dr. Buckmaster] uncovered some nuggets of new, *i.e.*, non-public, information, [Dr. Buckmaster's] claims of fraud are based at least in part on allegations already publicly disclosed." *United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008).

The public disclosures Baylor identifies detail numerous PHS Policy violations with great specificity. *See, e.g.*, Dkt. 25-5 (*Washington Post* article detailing incidents that violated animal-welfare provisions); Dkt. 25-12 (OLAW letter stating "our office understands that 33 mice on a PHS[-]funded activity failed to receive a secondary dose of analgesic for

cranial injections."). Dr. Buckmaster insists these examples are only the "tip of the iceberg" and she can provide details of many more infractions. Dkt. 26 at 13. But "contributing more of the same does not change the public character of a relator's allegations." *Colquitt*, 858 F.3d at 374. The fact that Dr. Buckmaster can offer details about additional violations of the same type as have already been publicly disclosed does not save her claim from the public-disclosure bar.

Second, Dr. Buckmaster argues only she can provide the "crucial link" to prove Baylor's fraudulent intent. Dkt. 26 at 14. That is, while the public disclosures revealed Baylor's numerous PHS violations, only Dr. Buckmaster can show Baylor's knowledge and concealment of the violations. *Id.* at 15. Once again, perhaps so, but this is not enough.

Public disclosures need to only "set the government on the trail of the fraud." *Jamison*, 649 F.3d at 329 (quoting *In re Nat. Gas Royalties*, 562 F.3d 1032, 1042–43 (10th Cir. 2009)). And "it is not necessary for the disclosure to connect all the dots or reach legal conclusions, it just has to set the government on the trail of fraud." *U.S. ex rel. King v. Solvay S.A.*, No. CIV.A. H-06-2662, 2015 WL 925612, at *8 (S.D. Tex. Mar. 3, 2015).

Here, Baylor provided the government with repeated assurances of compliance with the PHS Policy. Dkt. 13 ¶¶ 59, 72. Yet, the public disclosures

firmly establish the government was well aware of Baylor's serious non-compliance. *See* Dkt. 25 at 27 (collecting OLAW letters detailing knowledge of Baylor's PHS Policy violations). It is no great inferential leap to then conclude that Baylor's assurances were false. While Dr. Buckmaster may be able to provide details about who knew what and when, the public disclosures themselves clearly provided an inference of fraud.

The Fifth Circuit upheld summary judgment in similar circumstances in *Solomon,* 878 F.3d at 145. There, the defendant's violations of government guidelines were likewise revealed through public disclosures, but the relator argued he alone could provide information on the "necessary element of intentionality." The Fifth Circuit squarely rejected the argument as "overstat[ing] the threshold for an FCA claim." *Id.* Because the public disclosures alone "sufficiently indicate[d] misconduct and [led] at least to an inference of fraud", the court upheld summary judgment under the public-disclosure bar. *Id.*

Because the public disclosures of the PHS Policy violations clearly create at least an inference of fraud, Dr. Buckmaster's claim is based upon those public disclosures.

**3. Is Dr. Buckmaster the original source?**

An "original source" is a person "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B). "To be an original source, a person must have direct and independent knowledge of the information on which the allegations are based." *Colquitt*, 858 F.3d at 374.

Baylor argues that because Dr. Buckmaster's allegations largely mimic the public disclosures she cannot be an original source. Dkt. 25 at 21. Dr. Buckmaster does not directly respond to that argument. *See* Dkt. 26. By failing to respond to Baylor's argument, Dr. Buckmaster has abandoned any claim that she qualifies as an original source. *See Terry Black's Barbecue, L.L.C.*, 22 F.4th 450, 459 (5th Cir. 2022).

Even if Dr. Buckmaster had responded, for the same reasoning as discussed above, she would not have been able to raise a fact issue as to whether she is an original source. A relator does not qualify as an original source if she discovers through experience "what the public already knew." *Reagan*, 384 F.3d at 179. Rather, the relator must add "some additional compelling fact, or must demonstrate a new and undisclosed relationship

between disclosed facts." *Id.* Dr. Buckmaster does neither. She adds further details of a pattern of noncompliance of which the government was clearly aware. "The burden is on [r]elator to show that the information and allegations [she] discovered were qualitatively different information than what had already been discovered." *United States ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610, 630 (N.D. Tex. 2018), *aff'd*, 779 F. App'x 250 (5th Cir. 2019) (internal quotation marks and citation omitted). A relator is not an original source when she "merely add[s] detail or color to previously disclosed elements of an alleged scheme." *Vaughn v. Harris Cnty. Hosp. Dist.*, No. 4:17-CV-2749, 2021 WL 8129737, at *14 (S.D. Tex. Aug. 4, 2021) (quoting *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 211 (1st Cir. 2016)). Because Dr. Buckmaster fails to materially add to the public disclosures that detail Baylor's fraud, her claim must fail under the public-disclosure bar.

**B. Retaliation Claim**

The FCA contains a "whistleblower" provision designed to "encourage those with knowledge of fraud to come forward." *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). It provides that an employee "shall be entitled to all relief necessary" if the employee was "discharged, demoted, suspended, threatened, harassed, or in any other

manner discriminated against . . . because of lawful acts done by the employee . . . in furtherance of an action under this section to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1).

To begin, the dismissal of Dr. Buckmaster's *qui tam* claim above does not sink her retaliation claim. *Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) (per curiam). To establish a prima facie case of retaliation, a plaintiff must show "(1) that [she] engaged in protected activity; (2) that the employer knew about the protected activity; and (3) retaliation because of the protected activity." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019). The term "protected activity" covers more than simply filing an FCA claim. *See Thomas*, 517 F. App'x at 262; *see also United States ex rel. Johnson v. Raytheon Co.,* 395 F. Supp. 3d 791, 797 (N.D. Tex. 2019) ("[C]onduct may be protected regardless whether it leads to an actual *qui tam* action.") Dr. Buckmaster need not succeed on her *qui tam* claim to proceed with her retaliation claim.

After raising numerous concerns regarding Baylor's PHS Policy violations internally, Dr. Buckmaster emailed OLAW directly to alert the government. Dkt. 13 ¶ 165. The *next day*, Dr. Buckmaster's supervisor told her she wanted to meet right away. *Id*. In response to this meeting request, Dr. Buckmaster told her supervisor that she had "protested programmatic

noncompliance" to OLAW and NIH. *Id.* Later that same week, Baylor fired Dr. Buckmaster. *Id.* ¶ 166.

**1. Protected Activity**

"A protected activity is one motivated by a concern regarding fraud against the government." *Thomas*, 517 F. App'x at 262. General concerns of misconduct are not enough; the protected conduct must specifically allege fraudulent claims for federal funds. *Guerrero v. Total Renal Care, Inc.*, 2012 WL 899228, at *5 (W.D. Tex. Mar. 12, 2012). "[F]or a retaliation claim based on statutory noncompliance to be proper, a plaintiff needs to show that her decision to report the noncompliance *itself* was motivated by a concern that the noncompliance was defrauding the government." *Nichols v. Baylor Rsch. Inst.*, 418 F. Supp. 3d 143, 149 (N.D. Tex. 2019); *see also Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). In other words, Dr. Buckmaster must show that her email to OLAW was not solely to report statutory violations, but rather was motivated by a concern that Baylor was defrauding the government.

The timeline of events demonstrates that Dr. Buckmaster has carried this burden at this early stage. In September 2019, the deputy director of OLAW visited Baylor and specifically warned Dr. Buckmaster and her team that Baylor's grants were contingent on PHS Policy compliance. Dkt. 13 ¶ 135.

He specifically emphasized that proper reporting was needed to "protect your research funds." *Id.* Just ten days after this meeting, Dr. Buckmaster emailed OLAW directly to express her concerns about Baylor's compliance. *Id.* 165.

Without this email in the record, it is not altogether clear whether Dr. Buckmaster directly raised issues of fraud or merely raised noncompliance concerns. Nevertheless, drawing reasonable inferences in favor of Dr. Buckmaster, the court will assume for now that sending her email to OLAW, coming just days after a warning to Baylor against defrauding the government, was protected activity. *See Nichols*, 418 F. Supp. 3d at 149 ("To be sure, the basis for an actual FCA claim can be a false certification of compliance with federal requirements for funding.").

**2. Employer Knowledge**

Dr. Buckmaster must also show that Baylor knew she was engaged in a protected activity. *Thomas,* 517 F. App'x at 262. "It is insufficient for the relator to show that the employer knew that the whistleblower had concerns about compliance with the law; she must show that the employer was on notice of the distinct possibility of *qui tam* litigation." *United States ex rel. Gonzales v. Fresenius Med. Care N. Am.*, 748 F. Supp. 2d 95, 104 (W.D. Tex. 2010). "Courts have found this notice prong satisfied based on allegations

that the employee complained directly to her supervisors." *U.S. ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 608 (S.D. Tex. 2012).

Here, Dr. Buckmaster directly informed her supervisor that she had notified the government of Baylor's "programmatic noncompliance." Dkt. 13 ¶ 165. Surely such direct communication was sufficient to put Baylor "on notice that litigation [was] a reasonable possibility." *George*, 864 F. Supp. 2d at 608. It therefore also seems at this stage that Baylor had knowledge of Dr. Buckmaster's protected activity.

**3. Retaliation because of Protected Activity**

Finally, Dr. Buckmaster must show that her termination was "motivated by the protected activity." *Id.* at 609 (quoting *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 422 (D.C. Cir. 2005)). This hurdle "is not onerous; the plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Id.* (citation omitted).

Here, Dr. Buckmaster was terminated *one day* after allegedly informing her supervisor of her protected activity. Dkt. 13 ¶¶ 165–66. A prima facie case can be made on temporal proximity alone if "the protected act and the adverse employment action are 'very close' in time." *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (citing *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). "[A] period of two months is

close enough to show a causal connection." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019). The one-day gap present here is clearly a sufficient nexus to sustain Dr. Buckmaster's prima facie case.

* * *

For the foregoing reasons, the court grants Baylor's motion to dismiss in part. Dkt. 25. Dr. Buckmaster's *qui tam* claims, Counts I–III, are dismissed. But the motion to dismiss the retaliation claim, Count IV, is denied.

Signed on Galveston Island this 20th day of December, 2023.

Jeff Brown

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE